## TILLEY *v.* COX.

1. The writing itself is the best evidence of what a written instrument contains, and parol evidence as to its contents is not admissible in the absence of proof of its loss or destruction, or of its custody by a person beyond the the limits of the State who is not a party to the case.
2. Civil Code, § 5331, authorizing the court to direct the jury to find for the party entitled thereto, where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict, is not repugnant to the constitution of this State or that of the United States, as impairing the right of trial by jury, or as depriving a party of his property without due process of law.
3. There was no error in directing the verdict.
4. By the exercise of ordinary diligence the alleged newly discovered evidence could have been discovered in time for use upon the trial.

Argued March 14, — Decided March 30, 1904.

Complaint on notes.    Before Judge Roan.    DeKalb superior court.    May 16, 1903.

*Eb. T. Williams* and *Alex. W. Stephens*, for plaintiff in error.
*L. F. McClelland* and *J. D. Kilpatrick*, contra.

FISH, P. J.    S. A. Cox sued H. P. Tilley on two promissory notes.    Defendant in his answer admitted the execution of the notes, ·that they were unpaid, and that the plaintiff was the holder and owner of them at the time the action was brought.    He pleaded, that the notes were given for the premiums on a life-insurance policy for which he had applied to the New York Life Insurance Company, through Cox, its agent; that he intended to apply for a policy providing for a participation in dividends after the second year, which would "reduce ·the premiums each year with paid-up insurance for the face of the policy at the expiration of twenty years;" that he did not read the application, for the .reason that he could not easily do so without his glasses, which he did not have at the time; that Cox represented to him that the application was for the kind of policy he desired to obtain, and he implicitly relied upon such representation; "that when the policy was delivered it was totally different from the one he had contracted for with said Cox, it being a twenty-year policy with no dividends until the expiration of twenty years; that defendant immediately returned said policy and demanded the surrender of his notes by said Cox, but that he refused to take the policy tendered or to surrender his notes; whereupon he mailed it to him and remailed it, and is willing now and has always been to disclaim any benefits under it; that on account of the aforesaid misrepresentations by said Cox he was induced to sign said notes and application, being grossly misled by fraud; that the consideration of said notes has totally and wholly failed."    On the trial, the court directed a verdict for the plaintiff.    The defendant made a motion for a new trial upon various grounds, which being overruled, he excepted.

1.  One ground of the motion alleged that "Movant offered to prove by his own parol testimony the following material facts: that he did not get the kind of policy applied for by him or the insurance applied for by him, viz., a policy which would pay to him a dividend at the expiration of the second year and at stated

periods thereafter by which he could reduce his premiums." Another ground alleged: "The movant offered to prove by his own parol testimony the following material facts: that the policy which was sent him was not the kind of policy he applied for — a policy which would begin to pay dividends at the expiration of the second year, by which he could reduce his premiums, but was a policy which paid no dividends at the expiration of the second year." The evidence last quoted was offered after the witness had testified as follows: "After he received said policy he tendered it back to Holland, and he refused to accept it. Day or two later he tendered it to Mr. Cox, and he refused; and witness tendered it again to Mr. Cox, and he again refused. Witness then mailed it to the New York Life Insurance Company in Atlanta, and it came back. He then returned it to the company in Atlanta, and it came back to the post-office again, and he refused to take it out the office and has never seen it since. Does not know what became of it. After that witness called back at the post-office and called for the policy, and the postmaster said it was not there." The complaint was that the court erroneously rejected the evidence offered. We do not think that the court erred in ruling that this evidence was inadmissible. The plea of the defendant, as we have seen, was, that the policy he received was a twenty-year policy, which provided for no dividends until the expiration of twenty years, and that it was totally different from the one for which he had contracted. The policy itself was the highest and best evidence of what it contained, and as to whether or not it provided for a participation in dividends after the second year, which was the kind of policy the defendant claimed, in his plea, he had applied for. It is evident that the testimony of the witness did not show that the policy was either lost, destroyed, or inaccessible to the diligence of the defendant. The mere fact that the postmaster told him the policy was not in the post-office did not show that it was lost or destroyed. The postmaster did not say that it was lost, or that he did not know what had become of it. He simply said it was not in the office. Owing to the failure of the defendant to take it out of the office, the postmaster might have returned it to the address whence it came. Some one other than the defendant might have called for his mail, and the policy might have been delivered to such person.

So far as this testimony showed, the postmaster might have known exactly where the policy was, or, if it had left his possession, to whom it had been delivered or where he had sent it. The defendant simply traced the missing document to the possession of the postmaster, without introducing the evidence of the postmaster to show that it was lost or what became of it. Indeed, so far as the evidence showed, the defendant might have been informed as to the ·whereabouts of the policy, and it might have been an easy matter for him to have procured its production. Such information on his part was·not at all inconsistent with his statement that the postmaster told him it was not in the post-office.

2. Another ground of the motion was, that the court had no legal or constitutional right to direct a verdict for the plaintiff without the defendant's consent, and that ·in so doing the defendant was deprived of his constitutional right of a trial by jury, and was deprived of his property without due process of law, which was contrary to the constitution of the State and the provisions of the constitution of the United States, the provisions of the respective constitutions in reference to these matters being set out in the motion.    It is well settled that the provisions of the seventh amendment to the constitution of the United States, that, "In suits at·common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," applies only to the courts of the United States.    Murray's Lessee *v.* Hoboken L. & I. Co., 18 How. 280 ; Walker *v.* Sauvinet, 92 U. S. 90 ; Pearson *v.* Yeudall, 95 U. S. 294 ; Spies *v.* Illinois, 123 U. S. 131; 6 Am. & Eng. Enc. L. 974, and cit., note 4.    It is equally clear that the fourteenth amendment to the Federal constitution, providing that no State shall "deprive any person of life, liberty, or property, without due process of law," does not require a jury.    Walker *v.* Sauvinet, supra ; Hall *v.* Armstrong, 65 Vt. 421; Fant *v.* Buchanan (Miss.), 17 So. 371. The Civil Code, § 5331, provides: "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto." This section does not contravene the provision of our State constitution, that the right of trial by jury shall remain inviolate, nor

the provision that no person shall be deprived of property except by due process of law.     Under our procedure, it is the province of the jury, in civil cases, to pass upon questions of fact, and a trial by jury in such cases presupposes an issue of fact; so if there be no such issue, there is nothing for a jury to pass on. The jury, in such cases, has nothing to do with questions of law that may be involved, or with inferences of law from undisputed facts.     A plaintiff might with as much reason contend that the court when granting a nonsuit deprived him of his right of trial by jury as a defendant could contend that he was deprived of such right by the direction of a verdict against him, in a case falling within the provisions of the above-cited section of the Civil Code.     The right of the court to grant a nonsuit, in a proper case, has never been brought in question in this court, so far as we know.     In Naugatuck R. R. Co. v. Waterbury Button Co., 24 Conn. 468, it was held:     " The act of 1852, authorizing the granting of nonsuits in civil actions, where the plaintiff who has produced his evidence and rested his case, shall have failed to make out a prima facie case, is not repugnant to the constitution of this State, as impairing the right of trial by jury." While the plaintiff in error relies upon both of the above-mentioned provisions of our State constitution, they are each invoked for the same purpose, that is, to sustain his contention that he was entitled to a trial by a jury, the due process of law contended for being a trial by a jury.     As there was no issue to submit to the jury, due process of law did not require that the case should be tried by a jury.

3. As the defendant, in his answer, admitted in effect that the plaintiff was entitled to recover, unless the plea of the defendant should be sustained, and as there was no evidence to sustain the plea, there was no error in directing a verdict for the plaintiff.

4. Another ground of the motion for a new trial was alleged newly discovered evidence, which evidence was, in substance, that, after the trial and on the same day thereof, movant's brother informed him that the package, or letter, from the New York Life Insurance Company, which had been directed to movant at Decatur, Ga., and which he had requested his brother to return, had not been returned, because his brother had forgotten to do so, but had been placed by his brother under his buggy cushion, where it

had remained for six months, and was subsequently placed in a drawer at his house; that movant immediately went to his brother's house and procured the letter, or package, which had not been opened; that when he opened it, some time before the hearing of the motion for a new trial, in the presence of certain named witnesses, the insurance policy in question was found therein; that movant did not know during the trial where the policy was, but believed that his brother had returned it by mail to the agent of the insurance company at Atlanta. Affidavits of the movant and his counsel, in the usual form, as to the want of knowledge of the alleged newly discovered evidence at the time of the trial, and that the same could not have been procured by the exercise of proper diligence, were also submitted upon the hearing of the motion. The policy, which provided for no participation in dividends until the expiration of twenty years, was also put in evidence upon the hearing of the motion, as part of the alleged newly discovered evidence. The defendant had averred in his verified plea that he had twice returned the policy by mail to the agent of the company that issued it. On the hearing of the motion for a new trial the affidavit of counsel for plaintiff was submitted, in which they deposed, that, some ten days before the trial of the case, they notified counsel for defendant that the policy was not in the possession, power, custody, or control of themselves, or of their client, or of the New York Life Insurance Company, but that, according to the information and belief of deponents, it was in the possession, power, custody, and control of the defendant; and that deponents then notified counsel for defendant that they would demand strict proof of the policy, and defendant's counsel had better make some effort to procure it. As it appeared that the defendant had delivered the letter containing the policy to his brother, to be returned by mail to the agent of the company, and that his counsel had been notified that it was not in the possession, power, custody, or control of the insurance company, the plaintiff, or his counsel, it seems that the slightest diligence on the part of the defendant would have required him to make inquiry of his brother as to whether or not he had mailed the letter containing the policy. As is well known, the granting of new trials on the ground of newly discovered evidence is not favored by the courts, and the discretion of a trial judge in refusing a new trial

on such ground will not be controlled unless manifestly abused. We do not think there was any abuse of discretion in this instance.

*Judgment affirmed. All the Justices concur.*