# VICKERS v. PHILIP CAREY CO.

No. 7014.   Opinion Filed July 13, 1915.

Rehearing Denied October 12, 1915.

(151 Pac. 1023.)

1.  **NEW TRIAL — Petition — Newly Discovered Evidence.** While the statute provides (section 5037, Rev. Laws 1910) that where the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict is rendered, the application for a new trial may be made by petition filed in the original case, not later than the second term after the discovery, and in no event later than one year after final judgment was rendered, yet, where the ground of the petition is newly discovered evidence, such applications are as a general rule viewed with disfavor by the courts.

2.  **NEW TRIAL—Newly Discovered Evidence.** The law authorizing the granting of new trials upon the ground of newly discovered evidence, does not contemplate that such new trials shall be granted where the newly discovered evidence is merely cumulative.

3.  **NEW TRIAL—Grounds—"Cumulative Evidence."** "Cumulative evidence," in the law governing the granting of new trials, is additional evidence of the same kind and to the same point as that given on the first trial, but it is not cumulative if it relates to distinct and independent facts of a different character, though tending to establish the same ground of claim or defense.

4.  **NEW TRIAL—Grounds—"Newly Discovered Evidence"—Requisites.** A rule of wide recognition regarding the granting of new trials on the ground of "newly discovered evidence" exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence.

5.  **APPEAL AND ERROR—Ground for Reversal—Granting of New Trial.** Where the newly discovered evidence tends only to

strengthen other evidence of the same kind to the same point, and is impeaching in its character, and is not such as would probably change the result if a new trial were granted, it is error, calling for a reversal, for the trial court to set aside the verdict of the jury and grant the moving party a new trial.

6.  **APPEAL AND ERROR—Questions Reviewable—Discretionary Ruling—Granting of New Trial.** Where the court grants a new trial on a petition filed after the term at which judgment was rendered, on the ground of newly discovered evidence, and in doing so disregards the established rules of law, its action presents a question of law reviewable on appeal.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by Arthur A. Vickers against the Philip Carey Company. From an order setting aside a verdict and granting defendant a new trial, plaintiff brings error. Reversed and remanded, with instructions.

*John R. Guyer* and *Robert A. Rogers,* for plaintiff in error.

*Keaton, Wells & Johnston,* for defendant in error.

SHARP, J.  The present action was instituted by the plaintiff in the court below on the 19th day of September, 1911, to recover damages on account of personal injuries alleged to have been sustained by him in falling from the roof of a barn being constructed by one Johnson and the defendant, Philip Carey Company, for the use of the State Agricultural and Mechanical College, at Stillwater, Okla., on the 7th day of July, 1910. The case came on for trial on May 23, 1912. A motion for judgment on the pleadings was sustained by the trial court, and, no application to amend the petition being made, judgment was entered for the defendant for its costs. Thereafter, new counsel being employed in said action,

a motion was made to vacate and set aside the judgment of the court, which motion was thereafter amended, and, at a subsequent term of the court, was sustained. Defendant prosecuted error to this court, where the order of the court vacating the original judgment was affirmed. *Carey Co. v. Vickers,* 38 Okla. 643, 134 Pac. 851. On October 20, 1913, said cause again came on to be heard in the superior court, resulting in a verdict in favor of plaintiff in the sum of $6,500. Within three days thereafter a motion for a new trial was filed by defendant, one of the grounds thereof being newly discovered evidence of one Harry Reed. Thereafter a hearing was had on said motion, at which testimony was heard, and the deposition of Harry Reed introduced in evidence. The motion was overruled, and an extension of time granted defendant in which to make and serve a case-made for appeal. On the 30th day of January, 1914, defendant filed its petition for a new trial on the ground of newly discovered evidence of one J. H. Miller, who, it was said, was a witness to the accident sustained by plaintiff. It was charged in this petition that:

The evidence of said Miller "is not wholly cumulative, but is newly discovered, material to its defense of said above-entitled action, and which it could not, with reasonable diligence, have discovered and produced at the trial thereof, nor at the term of court at which the verdict of the jury and the judgment based thereon was rendered."

The petition for a new trial came on to be heard on May 19th following, and, after defendant had introduced in support thereof a part of its evidence, it was granted leave to file an amended petition for a new trial on the ground of newly discovered evidence of one M. L. Sanders. A continuance was thereupon granted plaintiff,

and the petition as amended again came on for trial on June 8, 1914, at which time, and after hearing 'had, the court set aside the verdict of the jury and granted the defendant a new trial. From that order the present appeal is prosecuted.

The petition for a new trial was filed under authority of sections 5035, 5037, Rev. Laws 1910. While "newly discovered evidence," material to the party applying, which it could not with reasonable diligence have discovered and produced at the trial, is ground for a new trial, applications therefor founded on such evidence are not favored in law. *Arnold v. Skaggs,* 35 Cal. 684; *Tilley v. Cox,* 119 Ga. 867, 47 S. E. 219; *Zimmerman v. Weigel,* 158 Ind. 370, 63 N. E. 566; *Canfield v. City of Jackson,* 112 Mich. 120, 70 N. W. 444; *Lampsen v. Brander,* 28 Minn. 526, 11 N. W. 94; *Moore v. Coates,* 35 Ohio St. 177; *Wheeler v. Russell,* 93 Wis. 135, 67 N. W. 43; *Weston v. N. Y. El. R. Co.,* 42 N. Y. Super. Ct. 156; *Liberty v. Burns,* 114 Mo. 426, 19 S. W. 1107, 21 S. W. 728. Such applications are regarded with suspicion, and should be examined with caution. 14 Enc. Pl. & Pr. 790. In an early decision *(Berry v. State,* 10 Ga. 511), the rule was announced that a new trial would not be granted on a mere showing that new evidence had been discovered. Such evidence, it was said, in order to be sufficient, must meet the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence. This

rule is one that is now in force in a large majority of the states, and has in some jurisdictions been incorporated into the statutes or codes of procedure.      14 Enc. Pl. & Pr. 791; Graham & Waterman on New Trials, p. 1021.

Passing the objections to the sufficiency of the petition, and the questions of diligence and practice, we will examine into the character of the newly discovered evidence and the change in the result that it would probably bring about in the event of a new trial. Plaintiff in his amended petition, among other things, charged that it was the duty of the defendant company to furnish and provide the plaintiff with fit, suitable, and safe ropes, apparatus, and appliances, for the completion of the work and erection of the scaffolding, and it did furnish him with two ropes and directed and ordered that he use the same in and about the erection of the scaffolding on the barn roof; that the said ropes were defective, which fact was unknown to plaintiff, and could not have been discovered by him on account of the ropes being covered with a coat of paint, which concealed the defects therein; and that the injuries sustained by plaintiff were occasioned by the breaking or parting of one of the ropes, thereby causing the plaintiff to fall to the ground from the roof of the barn. On the part of the defendant company, it was contended that, if any injuries were sustained by plaintiff, the proximate cause thereof was his own negligence directly contributing thereto, in that he constructed or supervised the construction of the platform on which he was standing at the time in a careless, negligent, and unsafe manner, and without providing proper and safe supports therefor. Around these contentions of the parties the testimony centered, and, at the conclusion of the trial,

the following special interrogatory was submitted to the jury:

"Do you find that the plaintiff's injuries were caused by the breaking of one of the ropes holding the scaffolding and on which he was standing at the time of the fall, or by breaking or parting of a portion of the scaffolding itself?"

And to which the jury through their foreman answered, "We, the jury, find that the rope broke," thus thus specifically refusing to accept the theory of the defendant that the injury was caused by a breaking or parting of a portion of the scaffold erected by Vickers.

Having mentioned the respective contentions of the parties, we will next consider the newly discovered evidence in connection with the evidence of the different witnesses, to determine whether it fulfills the requirements heretofore announced. John H. Miller, in his deposition taken on February 26, 1914, stated that on July 7, 1910, he was under the employ of A. A. Vickers, for the Phillip Carey Company, at Stillwater, Okla., and that on said day he and said Vickers were at work painting the roof of a dairy barn being constructed for the Agricultural and Mechanical College. Being asked how the work was being done, the witness answered:

"Mr. Vickers had built a scaffold by placing two comb jacks at the comb of the roof, with two jack blocks extending down the roof with a rope fastened to the comb jacks at the comb of the roof, about 10 or 12 feet apart, with a board laying across them about 14 feet long, about 10 or 12 inches wide, 2 inches thick. The ropes were used to adjust the scaffold blocks up and down the roof, so that we could paint from eave to comb. I mean the ropes hung to the comb jacks, and at the lower end of the ropes these jack blocks were fastened, and to each of

these two jack blocks a scaffold jack was nailed, and the' board was laid across these scaffold jacks. The board was supported by these jacks—nothing else."

The accident to Vickers was described by the witness in the following language:

"Mr. Vickers and I were on the roof after we got our scaffold fixed, and he told me to go down on the scaffold and get some kind of a tool, and I started, and he called me back, and told me I had better let him go; that the scaffold might not be safe. I came back to the comb of the roof. Mr. Vickers himself went down; not being on the scaffold but just a little while, it gave way on one end, and the part that he was standing on slid down, tore loose the tin gutter, and Mr. Vickers slid down the roof through the gutter with the board, and I climbed down to where Vickers was lying on the ground," etc.

Questions and answers concerning the witness' version of the accident are:

"Q. What gave way about the scaffold? A. One jack that was nailed to the block; I mean the scaffold jack. Q. State whether or not on your return (on the roof) you made any examination of the scaffold. A. Yes. I did. Q. State what that examination was, and what you found? A. I examined it to see if the ropes were broke. They weren't. There was nothing wrong, only one of the jacks pulled off the scaffold blocks. It was the jack at the west end of the building. There was nothing wrong with the ropes. I never found anything wrong with the ropes, though I looked at them carefully."

This is all the testimony of the witness Miller that deals with the manner of the accident. The following witnesses were produced and testified at the original trial: Grover Boaz testified on behalf of defendant: That he helped Vickers paint the dairy barn roof, and remembered the occasion of the former's injury, having worked with

him the forenoon of the day of the accident. That, while he did not work during the afternoon, he was near by at the time Vickers was hurt, and at the place of accident immediately afterwards. That Miller, Carr, Bratton, and others were present at the time. That, while the scaffolding was not on the roof at noon, he observed it between 3:30 and 4 o'clock in the afternoon, and saw Vickers and Miller on the roof about 15 minutes prior to the accident. The witness observed the scaffold and rope; noted that a part of the scaffolding was still on the roof; that two of the ropes were on the roof; and on the following morning also observed the jacks or ropes, and described their condition and location, stating that he saw no broken ropes. E. J. Carr, who was superintending the construction of the barn, also testified as a witness for defendant, and stated that he had observed Vickers during the forenoon, while making brackets for use on the scaffold, and had a conversation with him with reference to the size of the nails that he should use. It appears that this witness had made a model of a part, if not all, of the scaffolding used by Vickers on the roof, and from which model he and other witnesses testified. The witness was in the barn at the time of the accident, and ran out to give assistance to the injured man. While waiting for a conveyance to carry Vickers to a hotel, the witness examined the scaffolding to ascertain the cause of the accident. He testified at length as to the condition of the scaffolding, jacks, and ropes; that the latter were not broken; and his description of the rig, and the manner in which it was intended to aid the workmen, was similar to that of the newly discovered evidence of the witness Miller. P. H. Clark was also produced by defendant, and testified that he worked for Vickers, painting the dairy barn roof, and

recalled the circumstances of the accident. At the particular time thereof the witness was in the barn. He had noticed Vickers building the scaffold. Like Boaz, this witness worked on the roof until noon, but did not work during the afternoon. When Vickers fell from the roof, the witness ran out of the barn, saw Bratton, Catron, and two others caring for Vickers, and with others looked around to see if they could ascertain how the accident had happened. The witness then described the scaffolding and ropes still on the roof, their condition, and testified that the west rope was not broken. M. E. Bratton testified for defendant that at the time of the accident he was at work in the barn on which plaintiff was at work. With others he ran out of the barn and saw Catron, Corncross, and Carr pick up the injured man, and described the condition of the scaffolding and ropes, a part of the former being on the ground, the balance on the roof. In addition to the witnesses named, C. E. Volkman testified as to the result of an investigation made by him on the day following. Fred Dawson's testimony, introduced by plaintiff, was corroborative of that of plaintiff. It was, in short, that he was working at the time for Vickers near the top of the roof, and a witness to the accident; that plaintiff's injury was caused by the breaking of the rope a short distance from the end of the jack. These witnesses for defendant, other than Volkman, were all present on the occasion of the accident, and the testimony given by them appears to be without substantial conflict, and all tends to place the responsibility for the accident upon Vickers, and not upon the company. It is unnecessary that we set out at length all or the exact testimony of these several witnesses, as to the cause of the accident. It is obvious that the jury accepted the evidence of the plaintiff and the

witness Dawson, as to how the accident occurred, rather than that of the witnesses named.

We have seen that defendant's original petition for a new trial was filed on January 13, 1914, and came on to be heard on the 19th day of May following; and after various witnesses had been examined, depositions and affidavits introduced, defendant obtained leave to file an amendment to its petition for a new trial. The proposed amendment, which was permitted to be filed, charged that one M. L. Sanders would testify to a conversation had by him, with the witness Dawson, in which, among other things, said witness had informed Sanders that he saw the accident resulting in plaintiff's injuries, and that the plaintiff was not entitled to recover therefor. His testimony in part is:

"That at and just prior to the time of the fall plaintiff was standing on the scaffolding with his hands in his pockets, jumping up and down thereon. That neither one of the ropes broke, but that the block to which one of them was atttached pulled out, and let one end of the scaffoldng fall, thus precipitating plaintiff from the roof to the ground. Stating further, in this connection, that Vickers had built the scaffolding himself, and that nobody was to blame for the accident but him, and asking the said Sanders, 'Have they got the rope yet, or what became of it?'"

This alleged conversation Dawson, under oath, denied having made. The only effect that this testimony could have would be to impeach that given by Dawson at the trial. A similar effort was made during the trial to impeach Dawson's testimony by one Holcomb, so that, not only is the testimony subject to the objection that it is cumulative, but impeaching as well.

As already seen, according to the testimony of the plaintiff and the witness Dawson, the former's injuries were caused by the parting of the rope. while the defense was that the injuries were the result of the defective and imperfect scaffolding constructed by the plaintiff. As to the former, plaintiff and the witness Dawson gave testimony. As to the latter, the witnesses Carr, Clark, Boaz, and Bratton testified that the ropes did not break, but that the scaffolding had given way. That the witness Miller would testify that neither of the ropes broke, but that plaintiff was injured as a result of his own defective workmanship, would only tend to corroborate the testimony of the witnesses last named. That it was claimed he was an eye-witness, which fact was denied by both plaintiff and Dawson, would not any the less make his testimony cumulative. Whether the ropes had in fact parted was a fact of which the four witnesses for the defense who observed or examined them after the accident were as capable of giving testimony as Miller. Whether or not these ropes had broken was a physical fact that could be determined by witnesses who immediately or soon thereafter examined them, as well as by an eyewitness. It must be conceded by all that it should be the policy of the courts, and that the public interest requires, that litigants should make all the preparation for trial that reasonably lies within their power previous to the calling of the case for trial. Aside from anything that appears in the present case, in so far as the distinguished counsel are concerned, there is no effectual way of spurring the dilatory and of preventing the most lamentable and ruinous procrastination, except by requiring parties to be ready for trial when their case is called, and of punishing them with the consequences if they are not.

There should be a reluctance in courts to disturb the verdicts of juries, except in cases where it is manifest that either the law has been perverted, or mistaken, or that the losing party has not had a full and impartial hearing. In deciding motions or petitions for new trials on account of newly discovered evidence, courts have found it necessary to apply some stringent rules to prevent an almost endless mischief which a different course would produce. The reasons for this are obvious. As trial by jury is largely resorted to in the settlement of actions at law, there is a clear policy to protect such trials from the imputation of injustice, and preserve for it the good opinion of those whose dearest rights may be subject to its decision. On this ground, mainly, applications for new trials, where injustice is supposed to have been done by verdicts, have been listened to by the courts as a necessary corrective of the accidents and mistakes that often attend a first trial, and as essential in many cases to attain the great end of litigation—a correct decision of causes according to their merits. This mode of preventing injustice was at a very early day resorted to by the courts; and though subject, in a great degree, to the discretion of the judges, it is, as far as practicable, to be regulated by a legal discretion on principles ascertained by adjudged cases. The party who brings himself clearly within the principle of such cases obtains a new trial as a matter of right, and not merely at the discretion of the court; except, perhaps, in cases where the grounds of his application may be strengthened or otherwise affected by the judge's opinion of the justice of the first verdict. Graham & Waterman on New Trials, p. 1086.

Early in the history of this court it was decided that it was not error to overrule a motion for a new trial

based upon the ground of newly discovered evidence when such evidence was merely cumulative. *Twine et al. v. Kilgore*, 3 Okla. 640, 39 Pac. 388. The same rule is announced in *Huster' v. Wynn*, 8 Okla. 569, 58 Pac. 736, where, in addition, it was said that a new trial would rarely be granted for the purpose of procuring evidence of impeachment. In *McCants v. Thompson*, 27 Okla. 706, 115 Pac. 600, it was also held that the newly discovered evidence must not be cumulative merely, and that a new trial should not be granted on newly discovered evidence, unless such evidence, if before the jury, ought to have changed the verdict. It was said in *Hobbs v. Smith et al.*, 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697:

"Motions for a new trial upon the extraordinary ground of newly discovered evidence are not favored. If not regarded with suspicion, they should at least be granted with great caution. They should only be granted to avoid palpable injustice, and in order that the judgment set aside may perhaps be replaced by a different finding."

Further, in the course of the opinion:

"A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than one fair, reasonable opportunity to establish his claim or defense. To allow more would be to protract litigation to the extent which would preclude the administration of justice."

These decisions were followed in *Lookabaugh v. Bowmaker*, 30 Okla. 242, 122 Pac. 200. In *Burford v. Benton*, 44 Okla. 283, 144 Pac. 349, this court reversed the judgment of the trial court for failure to grant a new trial on account of newly discovered evidence, and, while it was said that such evidence was in a sense cumulative, yet the court added that it did not entertain the slightest

doubt but that, if such evidence had been produced, the jury would have arrived at a different verdict.

"Cumulative evidence" has often been described as additional evidence of the same kind, and to the same point. 29 Cyc. 907; 8 A. & E. Enc. Law, 462; Chamberlayne on Evidence, sec. 549. Evidence to prove a distinct issue is not cumulative. A generally recognized rule is that evidence of a distinct probative fact is not cumulative evidence of another fact, although both facts support the same issue. Although evidence is additional to other evidence tending to prove the same position, yet it is not cumulative if it is of a different character, tending to establish the same result by proof of a new and distinct fact. 14 Enc. Pl. & Pr. 816.

"Cumulative evidence, as the term is here used," it was said in *Layman v. Minneapolis St. R. Co.*, 66 Minn. 452, 69 N. W. 329, "is held to be evidence which speaks to facts in relation to which there was evidence on the trial; or, in other words, it is additional evidence of the same kind, and to the same point, as that given on the first trial. But it is not cumulative if it relate to distinct and independent facts of a different character tending to establish the same ground of claim or defense."

Keeping in mind the definition of "cumulative evidence," it appears clear that the evidence of the witness Miller was of the same kind and directed to the same point as that of other witnesses. That from his position he may have been an eyewitness to the accident (which fact is denied by plaintiff and the witness Dawson), does not of itself determine that it was not cumulative, but rather presents a sharp issue of fact with the testimony of the plaintiff's witnesses, and tends to corroborate the testimony of the witnesses for the defendant. In other

words, the only effect it could possibly have would be to make a stronger defense for the defendant company. As to the testimony of the witness Sanders, that part of it which would be competent evidence merely tended to impeach the testimony of the witness Dawson. Newly discovered evidence, the purpose of which is to impeach a witness, is not a sufficient ground for a new trial, unless it be that it would probably change the result if a new trial were granted. If the new evidence tends to prove a distinct and material fact, and would probably produce a different result, a new trial, it is true, should be granted, although such evidence may also tend to impeach the adverse party or his witnesses. 14 Enc. Pl. & Pr. 810. We cannot say, after an examination of the newly discovered evidence, that, even though the testimony of the witnesses Miller and Sanders were produced at a new trial, it would probably result in a verdict for the defendant. Neither are we prepared to say that the verdict is unjust. To refuse a new trial when the losing party has discovered new testimony of a conclusive character, such, for instance, as a receipt or a release, would ordinarily be against reason and authority; but to do so because such party has found other witnesses whose testimony would only go to strengthen those produced at the trial would, in many cases, lead to a very great abuse. In *Goldie v. Corder*, 35 Okla. 247, 129 Pac. 3, a motion for a new trial was filed on the ground of newly discovered evidence, and it was held that the evidence offered was material, and was not cumulative; that the question presented to the court at the hearing of the motion did not involve the exercise of a judicial discretion, but presented a simple and unmixed question of law, for which reason the court would not interfere, unless it could be seen that error with refer-

ence thereto had been committed. The court cites, in support of its conclusions, *Shepherd v. Brenton*, 15 Iowa, 90. In this case the verdict of the jury was attacked both on the ground of the conduct of the jury, and for newly discovered evidence. After a review of many decisions, the opinion reads:

"It is conceded that if the court, in ordering a new trial, misapplies or mistakes a legal proposition, such ruling will be reviewed with the same freedom as if made at any other stage of the trial. In such a case this court does not supervise the discretion of the court below, but determines whether the view taken of the law was correct. And therefore, if it appeared in this case that a new trial was granted to enable defendant to obtain testimony impeaching or cumulative merely, * * * we should have no hesitation in reversing such order, for in such a case the court would have no discretion; the law settles the rights of the parties, and it was simply the duty of the court to declare it."

The rule thus announced is followed in *Town of Manson v. Ware*, 63 Iowa, 345, 19 N. W. 275. There it was contended that the order of the court granting a new trial would not be as readily reversed on appeal as when the motion had been denied. It was said further, in answer by the court, that such is the general rule there is no doubt, but it should, and always in its application has been, limited to cases where there is a discretion reposed in the court below, or when the new trial is granted on the ground that the verdict is against the evidence, or because injustice has been done. Where the courts grant a new trial on the ground of evidence not discretionary, and err in the application of a legal principle in so doing, such action will be corrected on appeal just as readily as if the motion had been overruled. It was further observed that

no discretion was reposed in the court in determining whether or not evidence is cumulative, and it was said that it was a bare legal proposition, which had been a fruitful subject of discussion in the courts for many years. In *McMullen v. Winfield Bldg. & Loan Ass'n*, 4 Kan. App. 459, 46 Pac. 410, the trial court set aside the verdict upon a showing of newly discovered evidence, and it was said by the Court of Appeals, in reversing the court's action:

"We are irresistibly forced to the conclusion that the evidence contained in the affidavits is so nearly the same as that given in the original trial that the court erred in not holding it cumulative and in not denying the motion for a new trial."

It was said that this was done with great reluctance, but that it was felt that the trial court erred in its legal conclusions, and that except for such error the new trial would not have been granted. Speaking with reference to the action of the court in its refusal to grant a new trial, it was said by Chief Justice Wheeler, in *Mitchell v. Bass*, 26 Tex. 372:

"Such motions are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and, where the court has refused an application made upon this ground, the appellate court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law. Yet, much as should be left to the discretion of the court, and reluctant as the appellate court may be to interfere with the exercise of that discretion, there are cases where established rules of law and the principles of adjudged cases would be disregarded if the party was denied a new trial upon newly discovered evidence. A party who brings himself within the principles of such cases is entitled to a new trial as a matter

of right, unless it be in those cases where it is apparent to the court that the justice of the case has been attained."

And so we think the rule is and should be. The "discretion" spoken of in the authorities is a legal discretion; a discretion to be exercised in discerning the course prescribed by the law, according to principles ascertained by adjudged cases. "Judicial power, as contradistinguished from the power of the law, has no existence," it was said by Chief Justice Marshall, in *Osborn et al. v. Bank of United States*, 9 Wheat. 738, 6 L. Ed. 204, 234. Courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law. To one coming within the rule announced, a new trial should be given as a matter of right, not merely as a result of the exercise of the court's will. So, on the other hand, where the court grants a new trial, but in doing so disregards the rules of law controlling the exercise of the power, its action presents a question of law reviewable on appeal.

From what has been said, it is manifest that the trial court erred in setting aside the verdict and in granting defendant a new trial. The judgment is therefore reversed, and the cause remanded, with instructions to set aside the order granting the defendant a new trial, and to reinstate the judgment in plaintiff's favor.

All the Justices concur.