SECURITY STATE BANK OF BERESFORD, Respondent, v.
BANK OF CENTERVILLE, Appellant.

(193 N. W. 670.)

(File No. 5089.   Opinion filed May 14, 1923.)

1. **Appeal and Error—New Trial—Granting New Trial for Insufficient Evidence Discretionary and Not Reviewable Save for Abuse.**

    Application for new trial on ground of insufficiency of the evidence to support the verdict is addressed to the sound discretion of the trial court, and its ruling will only be reviewed for manifest abuse of discretion.

2. **Appeal and Error—New Trial—Reversal of Grant of New Trial Requires More Evidence Than Reversal of Refusal of New Trial.**

    A clearer case is required to authorize a reversal of an order granting a motion for a new trial than is required to reverse an order overruling such motion.

3. **New Trial—Appeal and Error—In View of Preponderance of Evidence, Grant of Held Not Error.**

    In suit on certificate of deposit, in which the only issue was the genuineness of signature thereon, purporting to be that of defendant, an order of the court granting a new trial after verdict for defendant, held not an abuse of discretion in view of the preponderance of evidence against the verdict.

4. **Appeal and Error—New Trial—Abuse of Discretion Alone, and Not Weight of Evidence as It Appears to the Appellate Court, Is Presented for Review on Appeal from Order Granting New Trial.**

    On review of an order granting a new trial, the sole question before the appellate court is whether the trial court abused its discretion, and such appeal does not merely present the question whether or not the evidence sustains the verdict, nor is the question the same as that presented to the trial judge on the motion, as he has on such motion a wider discretion than has the court on appeal.

5. **Jury—Sufficiency of Evidence—New Trial—Trial by Jury Not Denied by Affirmance of Order Granting New Trial for Insufficiency of Evidence to Sustain Verdict.**

    Trial by jury held not denied defendant by affirmance of an order granting a new trial for insufficiency of the evidence to sustain verdict in his favor on a fact issue as to the genuineness of a signature.

    Dillon, J., dissenting.

Appeal from Circuit Court, Turner County; Hon. John. T. Medin, Judge.

Action by the Security State Bank of Beresford against the Bank of Centerville. Verdict was rendered for defendant, and, from an order granting a new trial, he appeals. Order affirmed.

*Bogue & Bogue,* of Parker, for Appellant.

*Caldwell & Caldwell,* of Sioux Falls, for Respondent.

(1) to (4) To points one to four, Appellant cited: Root v. Bingham, 128 N. W. 132, 26 S. D. 118; Sayer v. Lee, 170 N. W. 148; Drew v. Lawrence (S. D.), 159 N. W. 274; Brewing Co. v. Mielenz, 5 Dak. 136, 37 N. W. 728; Jeansch v. Lewis, 1 S. D. 609, 48 N. W. 128; Weiss v. Evans, 13 S. D. 185, 82 N. W. 388; Chamberlayne Modern Law of Evidence, Sec. 312.

Respondent cited: Root v. Bingham, 26 S. D. 118; Schoof v. Hoagland, 183 N. W. 132.

SHERWOOD, J. This action is on a certificate of deposit for $9,375, issued by the Bank of Centerville on October 3, 1919, to W. W. Ross, due 12 months after date. The certificate was indorsed and delivered to plaintiff for value, and before due. The names of W. W. Ross and Wm. M. Colby were written on the back of the certificate when plaintiff received it. The certificate was not paid when due. Suit was brought.

Defendant Ross denied he ever indorsed or delivered the certificate to any person and alleged his name indorsed thereon was a forgery. The case was tried to a jury. Verdict was rendered for defendant.

Plaintiff moved to set aside the verdict and for a new trial, on the ground of insufficiency of the evidence to justify the verdict, because the only question submitted to the jury was "did W. W. Ross indorse this certificate," and "the testimony of the plaintiff's witnesses, Wm. Colby, H. Shoulberg, A. R. Buswell, E. H. Youngstrom, H. A. Gross, J. A. Weiland, K. I. Shager, and T. L. Youngers, is all to the effect that this indorsement is in the handwriting of the said Ross, and there is no evidence sufficient to the contrary. W. W. Ross himself could not testify that this was not his handwriting, but the effect of his testimony merely is that he has no recollection of signing such an instrument."

Motion for new trial granted and defendant appeals.

The only question presented by this appeal is: "Did the trial court abuse its discretion by granting a new trial?"

[1] This court has said that "an application for a new trial upon the ground of the insufficiency of the evidence to support the verdict is addressed to the sound discretion of the trial judge, and his discretion will only be reviewed by this court in case of manifest abuse of that discretion." Distad v. Shanklin, 11 S. D. 1, 75 N. W. 205; Hodges v. Bierlein, 4 S. D. 258, 56 N. W. 811; Alt v. Railway Co., 5 S. D. 20, 57 N. W. 1126; Grant v. Grant, 6 S. D. 150, 60 N. W. 743; Esshom v. Hotel Co., 7 S. D. 77, 63 N. W. 229; Gotzian & Co. v. McCollum, 8 S. D. 186, 65 N. W. 1068; 16 Am. & Eng. Enc. Law 693; Root v. Bingham, 26 S. D. 118, 128 N. W. 132; Gamble v. Keyes, 39 S. D. 592, 166 N. W. 134; Schoof v. Hoagland, 44 S. D. 184, 183 N. W. 132; Finch v. Martin, 13 S. D. 274, 83 N. W. 263.

[2] And has further said: "A clearer case is required to authorize the reversal of an order granting" a motion for a "new trial than is required to reverse an order overruling" such motion. Hodges v. Bierlein, supra; Halpin v. Nelson, 76 Iowa 427, 41 N. W. 62; Blewett v. Hendry, 37 S. D. 106, 156 N. W. 795.

[3] The only question presented to the jury was whether the name of W. W. Ross on the back of the certificate of deposit, "Exhibit A," was his genuine signature. Upon this question 10 witnesses gave testimony. The testimony of the cashiers of all three banks in the town near which defendant had lived for over 20 years, who were all well acquainted with defendant, two of them for 20 years or more, men who had seen him write his name frequently, cashed his checks often, for years, with two of which banks defendant had done his quite extensive banking business for many years, and with one of which he was then doing his banking, was that they each considered it the signature of defendant and would have paid money on it if presented at their banks. Three cashiers of banks in the city where the case was tried testified according to their best judgment it was defendant's genuine signature. One expert testified it was without doubt defendant's genuine signature. Another witness testified he personally saw defendant sign that name upon that certificate. In

opposition to this, defendant testified alone that it was not his signature. But he also testified that he could not tell by the signature itself whether he signed it or not and could only tell by looking at the contents of the paper; that he could not always tell his own signature, and that this signature looked like his writing. Defendant's son, whom he offered as a witness, testified the signature looked like defendant's, and he could not tell whether it was or not. He was sure it was not signed on the day plaintiff claimed it was signed, and he never saw defendant sign it.

Considering defendant's interest in this case, the peculiar nature of his testimony, the great preponderance in the number of unimpeached witnesses against him, we cannot say the lower court abused its discretion in granting a new trial.

The trial judge saw most of the witnesses, noted their demeanor on the witness stand, heard them testify, and was in a better position to correctly weigh their evidence than we are. When, in his view, the interests of justice will be subserved by granting a new trial, that decision should not be lightly overturned by this court.

[4] We cannot agree with our colleague that this appeal presents only the question whether or not the evidence is sufficient to sustain the verdict, or that it is to be determined by us on our belief or disbelief in the veracity of one of the witnesses produced by the plaintiff.

It is settled law in this state that the sole question before the appellate court on an appeal from an order granting a new trial is: Did the trial court abuse its discretion in granting a new trial? If it did not, the trial court must be sustained. Distad v. Shanklin, supra, and other decisions of this court there cited.

Neither can we agree that the question presented to this court on appeal is the same as that presented to a trial judge on motion for a new trial. In considering this question, the late Judge Corson said:

"But the trial court is vested with much larger discretionary powers in denying or granting a new trial than is possessed by this court. The trial court may pass upon the weight of the evidence, and determine, in view of all the circumstances, in the case, whether or not a new trial should be granted." Western Surety Co. v. Boettcher, 39 S. D. 541, 165 N. W. 381; Rex Buggy

Co. v. Dinneen, 23 S. D. 474, 122 N. W. 433; Finch v. Martin, 13 S. D. 274, 83 N. W. 263; Dickinson v. Hahn, 23 S. D. 65, 119 N. W. 1034; Ross v. Robertson, 12 N. D. 27, 94 N. W. 765; Clifford v. Latham, 19 S. D. 376, 103 N. W. 642; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; Schoof v. Hoagland, 44 S. D. 184, 183 N. W. 132.

In Drew v. Lawrence, 37 S. D. 625, 159 N. W. 276, this court said:

"Inasmuch as the law presumes that a new trial of a cause will result in a just judgment, there is vested in the trial courts a wide discretion to set aside verdicts and grant new trials, which discretion will seldom he disturbed by an appellate court, even though from reading the record on appeal, it appears that the jurymen fairly exercised the reasoning faculty in arriving at their verdict." Shuman v. Lesmeister, 34 N. D. 209, 158 N. W. 271; Ede v. Ward, 32 S. D. 351, 143 N. W. 269.

[5] We are unable to see how the return of this case to the circuit court, to be tried before another jury can be a denial of the constitutional right to a jury trial.

The order of the circuit court, granting a new trial, is affirmed.

DILLON, J. (dissenting). In my judgment the order granting a new trial should be reversed. The case was tried to a jury; a verdict was returned for the defendant. On March 24, 1921, judgment was rendered in favor of the defendant, dismissing the cause of action. Thereafter a motion for a new trial was granted on the ground of insufficiency of the evidence.

The plaintiff could not recover without proof of the indorsement of the certificate of deposit. The four notes purporting to be signed by W. W. Ross and the indorsement on the certificate of deposit were all before the jury. They had the opportunity to compare the genuine signature with the alleged forgeries. The fact that a number of witnesses gave the opinion that they believed the same person signed all of them was not conclusive, nor binding on the jury. City National Bank v. O'Leary (S. D.), 190 N. W. 1016.

Courts are found declaring that the evidence of experts is so weak and decrepit as scarcely to deserve a place in our jurispru-

dence, and much too loose and unsatisfactory to lay a foundation for judicial decision. State v. Ryno, 68 Kan. 348, 74 Pac. 1114, 64 L. R. A. 303.

The rule in this state is well established that when two rational results may be reached on the evidence it is the right of the jury to decide which shall be taken. The verdict of the jury appears to be just and right. The action of the court in granting a new trial on insufficiency of evidence to sustain the verdict cannot be justified on the ground of judicial discretion. The court will usually grant a new trial where it becomes necessary to correct some errors or mistakes occurring at the trial, but there are no mistakes to correct here, no errors in the instructions, no errors in the admission or rejection of evidence. This court does not supervise the discretion of the lower court, but it will determine whether the view taken by the lower court was correct. The law settles the rights of the parties, and it then becomes the duty of the court to declare it, and in such case the court has no discretion.

Haynes, New Trials, vol. 2, p. 1650, states the rule as follows:

"A test of what is within the discretion of a court has been suggested by the question, May the court properly decide the point either way? If not, then there is no discretion to exercise. If there is no latitude for the exercise of the power, it cannot be said that the power is discretionary." Vickers v. Philip Carey Co., 49 Okl. 231, 151 Pac. 1023, L. R. A. 1916C, 1155.

It is undisputed that on the 2d day of October, 1919, at the home of W. W. Ross, at Akron, when present G. M. Ross, Dave C. Miller, William Colby, and Mrs. Ross, a settlement was had on the Midland Packing Company stock transactions. On that occasion the son signed three notes, one for $11,250, one for $7,500, and one for $5,000. The father, W. W. Ross, signed one note of $7,500, and these four notes were all payable to the Midland Packing Company and were turned over to William Colby, agent. No other papers were signed either by the father or the son on that occasion. The alleged Centerville Bank notes were not signed at that time, and when Colby left he said he was going to Centerville.

It appears that a complete settlement was had, and the transactions between the parties were closed. It is clear that the certificate of deposit and the draft were delivered to Colby on October 3, 1919, and that Colby delivered to the defendant bank the alleged four forged notes, aggregating $12,500, in payment for the certificate of deposit and draft, and within a very short time thereafter delivered to the Centerville Bank the following letter: "Bank of Centerville, Centerville, S. D.

"Gentlemen: I hereby acknowledge receipt of draft for $3,125.00 and certificate of deposit for $9,375 in payment of four notes executed in favor of the Bank of Centerville as follows: one note for $3,000 dated Oct. 2nd, 1919, due Oct. 1, 1920; one note for $3,000 dated Oct. 2nd, 1919, due Oct. 1, 1920; one note for $3,000 dated Oct. 2nd, 1919, due Oct. 1, 1920; one note for $3,500 dated Oct. 2nd, 1919, due Oct. 1, 1920. ·

"I am perfectly satisfied to have you take these notes and will pay same promptly when due.

"Yours truly,                    [Signed]   W. W. Ross."

The notes mentioned were turned over to the Thompson Bank by Colby on the 3d. He then received the certificate of deposit and draft payable to W. W. Ross and did not give the bank a penny in return for them. The $7,500 note of W. W. Ross to the Midland Packing Company is still held by that company. These facts prove beyond any doubt that Colby's testimony was false.

Colby testified that after he received the certificate of deposit and draft he drove to Akron, Iowa, and that W. W. Ross was out on his farm and that he drove out there and brought him to town; and, in front of Ross's house, Ross sat in the car and indorsed the certificate of deposit and the draft in the presence of Dave C. Miller, and that Ross signed the letter to the Bank of Centerville which was mailed from Akron, Iowa. W. W. Ross denies this story and declares it false and untrue.

I am satisfied that the transaction of October 2d actually took place as testified to by W. W. Ross and G. M. Ross, when Dave C. Miller was present; that the G. M. Ross notes, for $11,250, $7,500 and $5,000, and the W. W. Ross note for $7,500, all to the Midland Packing Company, were signed and turned over to the Packing Company Agent on the 2d of October, but these

notes were clearly not the notes mentioned in the letter payable to the Centerville Bank. It is clear that W. W. Ross did not sign the letter to the bank, and it is equally clear that Colby had no transaction whatever with W. W. Ross on the 3d day of October, but there is a clear inference that Colby had substituted the closed transaction of October 2d and attempted to dovetail a truth into the fabricated transaction of the 3d. I am satisfied that the letter and the four notes were all forgeries. W. W. Ross admits that he signed a letter which referred to the Midland Packing Company notes, but he consistently maintained that the signature on the four notes to Thomson Bank and the indorsement on the certificate of deposit and the letter were all forgeries, and he further testified if Colby had asked him to indorse the certificate of deposit he would not have done so, because he did not own it.

It does not appear from the record that there was any reason for the granting of a new trial. In order to justify the action of the court, the verdict must be manifestly and palpably against the evidence.

The surrounding circumstances make the story of this witness Colby highly improbable and incredible. His testimony is inherently false and impossible, and a new trial should not have been granted.

It is but poor consolation to a litigant to say that on the next trial it will be presumed that a just verdict will be reached, when there is now a just verdict. The evidence is not evenly divided; beyond any question it supports the finding of the jury with a demonstration of convincing facts. The story is told in a deposition, and the lower court should not be permitted, in the name of judicial discretion, to destroy the cherished right of a jury trial.

The verdict of the jury should be sustained, and the constitutional right of jury trial should not be denied.

Note—Reported in 193 N. W. 670. See, Headnote (1), American Key-Numbered Digest, Appeal and error, Key-No. 979(2), 4 C. J. Sec. 2816, 20 R. C. L. 275; (2) Appeal and error, Key-No. 977(3), 4 C. J. Sec. 2816, 2 R. C. L. 215; (3) New trial, Key-No. 72, 29 Cyc. 820; (4) Appeal and error, Key-No. 867(2), 4 C. J. Sec. 2874; (5) Jury, Key-No. 37, 24 Cyc. 192.