SOUTHERN COTTON OIL COMPANY v. A. E. SHORE ET AL., TRADING AS E. BREEN & CO.

(Filed 23 February, 1916.)

**Trials—Voluntary Nonsuit—Appeal and Error.**

The plaintiff in an action may, in proper instances, take a voluntary nonsuit at any time before the rendition of the verdict; and where the court has obtained the issues from the jury during their deliberation thereon, in an action upon contract, and the first issues have been an- swered in the plaintiff's favor and made known to them, but the answers to the issues as to damages are not known to them, and the judge delivers

the issues again to the jury with the instruction that they may deliberate upon the issues and make such changes as they may desire, it is reversible error to refuse the plaintiff's motion for a voluntary nonsuit, made as the jury were retiring to again consider the issues.

APPEAL by plaintiff from *Bond, J.,* at April Term, 1915, of WAYNE.

Civil action. The plaintiff sought to recover damages for the breach of a contract, dated 15 October, 1913, which was alleged to have been made between it and the defendants for the sale of certain "mill-run linters" and "second-cut linters," the defendants, as alleged, having agreed to take the entire output of the plaintiff's mill for the season of the years 1913 and 1914, and plaintiffs agreeing to deliver them, as fast as they could be made ready for shipment, at the prices stated in the contract.

The question as to the liability of A. E. and P. C. Shore turned upon the authority of S. Breen, who assumed to act for the defendants, to make the contract for them, and the subsequent ratification of the contract by the Shores.

The case was submitted to the jury upon issues which, with the answers thereto, are as follows:

1. Was the act and conduct of S. Breen, in making the contract sued on in the complaint, beyond the scope of the partnership business? Answer: "Yes."

2. Was the defendant S. Breen, in making the contract with the plaintiff, acting within the apparent scope of his authority? Answer: "No."

3. Did the defendants Shore and Shore have knowledge that S. Breen had made or entered into the contract sued on? Answer: "No."

4. If there was any limitation upon the authority of S. Breen to make the contract, did plaintiff have any knowledge or notice thereof? Answer: "No."

5. Did Southern Cotton Oil Company have notice at or before making of said alleged contract of any facts or circumstances calculated to put a prudent man on notice that S. Breen was making said purchase for purposes outside of the scope of said partnership business? Answer: "No."

6. Did the defendants Shore and Shore, by their acts and conduct, ratify the transaction? Answer: "Yes."

7. Were the linters shipped from Tarboro worthless and without commercial value, as alleged in the answer? Answer: "No."

8. What was the difference in market value, if anything, of the linters shipped from Tarboro (52 bales) and the contract price at time Shore and Shore refused to take them? Answer: "No difference."

9. At contract price, what sum would represent the 52 bales sent from Tarboro at time it was refused by Shore and Shore, if said goods

were of kind bought under alleged contract? Answer: "$815.25" (by consent).

9½. Did plaintiff Southern Cotton Oil Company, to whose order the 52 bales were shipped from Rocky Mount, leave same with the railroad so they were lost, after plaintiff was notified by the defendants, Shore and Shore, that they would not receive same? Answer: "Yes."

10. What amount are defendants Shore and Shore indebted to the plaintiff? Answer: "$1."

11. In what amount is defendant S. Breen indebted to plaintiff? Answer: "$1."

The jury retired with the issues, after being charged by the court upon the law.

The following statement appears in the record:

"About 7 p. m. the judge was sent for, and, counsel for both sides being present, the jury handed the issues to the judge with part of the issues, including issues 10 and 11 as to damages, answered.

"The court having, at plaintiff's request, charged the jury to answer all the issues as to liability in favor of plaintiff in any view of the evidence, counsel for defendant agreed that, subject to defendant's exceptions to the correctness of the charge, the court could write the answers in favor of plaintiff to issues numbers 4, 5, and 6, and by consent of plaintiff the court wrote the answers to numbers 9 and 9½. This left all the issues answered, as appears in record, except the issues numbered 7 and 8. Each issue, with the answers to the same, except issues 7 and 8 and the issues as to amount of damages, was then read aloud in presence of counsel for both sides, and the jury agreed that such was their verdict as to all the issues then answered. The court then handed the paper back to the jury and told them to retire and consider their answers as to issues 7 and 8, and to return when they had answered them, if they wished no change in any others; and the jury then retired to their room. All of the above occurrences took place in presence of counsel for both sides, and without any objection.

"The plaintiff's counsel, soon after the jury went in their room, arose and said that plaintiff would take a nonsuit. Defendant objected; objection sustained, and plaintiff excepted.

"A few moments thereafter some question arose as to the exact language of issues 7 and 8, and the court told the officer to knock on the door of the jury room and ask the jury to send the paper to the court for a moment. The court took the paper and read issues 7 and 8, and asked if counsel for defendant objected to the withdrawal of issues 7 and 8, to which the reply was 'No.'

"The court then had the jury called in and, in the presence of counsel for both sides, stated that it had concluded to withdraw issues 7 and 8, and then did so. Counsel for plaintiff objected to the withdrawal of

issues 7 and 8, and excepted to the action of the court in withdrawing same. The jury was then called in and, the issues and answers to same, except the 7th and 8th, being read aloud, and being exactly as they were when the jury was sent out to consider issues 7 and 8, were again asked if that was their verdict before they were sent out to consider issues 7 and 8, and if it was still their verdict. They answered both questions in the affirmative. The court ordered the verdict as to all the issues except 7 and 8 to be recorded, and the plaintiff excepted. Before the jury was sent out to consider issues 7 and 8 counsel for plaintiff knew the answers to all the other issues, except the issues relating to damages, which had been answered by the jury before they first came in. When the court sent out to borrow the issues, as above stated, and got the paper, answers to issues 7 and 8 had been written by the jury, but, as far as the court knows, neither side knew what the answers to 7 and 8 were."

The following statement also is in the case:

"After the jury retired to consider its verdict the occurrences herein-before related took place, as shown by the memorandum made by the court at the time, the court now adding thereto this statement: 'At the time the verdict was handed back by the judge to the jury, and they were told to retire and answer issues 7 and 8, which were afterwards withdrawn, the court then regarded said verdict as in all respects completed except as to said issues 7 and 8, and would have had same recorded without handing them back to the jury but for the opinion of the court, at that time, that it would perhaps be better to have the answers to 7 and 8 as well as to the other issues, which answers as to 7 and 8 the court soon thereafter concluded were immaterial, as set out in the recital of the occurrences which precedes this statement. The court did not at any time regard issues 7 and 8 as being necessary to a determination of the action, but was actuated simply by a desire to have all facts before the Supreme Court, in the event that the court might mistake the law in laying down the proper rule as to the measure of damages. The court charged the jury fully as to the measure of damages, and no exception was taken to this part of the charge by the plaintiff, either at the trial or in its case on appeal.'"

This statement by the judge also appears:

"By inspection of the issues, it will be noticed that issues 7 and 8 were not necessary to the determination of case, but were more in the nature of questions of fact, so that in the event of an appeal, if the court did not lay down the correct rule as to the measure of damages, a new trial might be rendered unnecessary by reason of the facts to be ascertained by those two questions. That was the purpose of the court in submitting those two issues, as they were not tendered by either side nor objected to by either side."

There was a verdict in favor of the plaintiff, assessing its damages, as shown by the record, and judgment was entered thereon. Plaintiff, after reserving all of its exceptions, appealed to this Court.

*Langston, Allen & Taylor and Murray Allen for plaintiff.*
*F. S. Spruill for defendant.*

WALKER, J., after stating the case: There was a petition in this Court for a *certiorari* to bring up the evidence and the judge's charge, which do not appear in the record, for the purpose of showing, as stated by counsel, the materiality of the 7th and 8th issues, if this Court failed to reverse the ruling upon plaintiff's voluntary tender of a nonsuit. But in the view we take of the case it is unnecessary to consider the petition.

A voluntary nonsuit is an abandonment of his cause by a plaintiff who allows a judgment for costs to be entered against him by absenting himself, or failing to answer when called upon to hear the verdict. 14 Cyc., 393. Plaintiff also may elect to enter a nonsuit, and this may be done at any time before the verdict is rendered. Under the early English practice the plaintiff had a right to be nonsuited at any stage of the proceedings he might prefer, and thereby reserve to himself the power of bringing a fresh action for the same subject-matter; and this right continued to the last moment of the trial, even till after verdict rendered, or, where the case was tried by the court without a jury, until the judge had pronounced his judgment; but this practice was not adopted here, and was abolished in England by 2 Henry IV., ch. 7, as early as the year 1400. See 6 A. and E. Pl. and Pr., p. 836 and note 4; 14 Cyc., 400; *Washburn v. Allen,* 77 Me., 344. The rule with us has been that the nonsuit may be taken at any time before verdict.

It was said by *Pearson, C. J.,* for the Court, in *Graham v. Tate,* 77 N. C., 120, 123: "A plaintiff can at any time before verdict withdraw his suit, or, as it is termed, 'take a nonsuit,' by absenting himself at the trial term. If he does so, and fails to answer, when called, by himself or by his attorney, the court directs a nonsuit to be entered, the cost is taxed against him, and that is an end of the case. Even when the plaintiff appears at the trial, takes a part in it by challenging jurors, examining and cross-examining witnesses, and by the argument of his counsel, if he finds from an intimation of the court that the charge will be against him, he may submit to a nonsuit and appeal. This is every day's practice. It is based upon the idea that the plaintiff announces his purpose not to answer when called to hear the verdict, and the advantage is that the plaintiff can have his Honor's opinion reviewed, and should the decision of the Supreme Court be against him, he can commence another action; whereas if he allows a verdict to be entered,

it is conclusive unless set aside. Nay, according to the course of the court, the plaintiff is at liberty to take a nonsuit by announcing his purpose to absent himself even after the judge has charged the jury and their verdict is made up, provided he does so before the verdict is made known."

Our case is much like that of *Cahoon v. Brinkley,* 168 N. C., 257. There six issues were submitted to the jury. The last three issues were answered by the court with the consent of the parties. The jury returned to the courtroom and stated that they had not agreed on the first three issues, but one of the jurors remarked that they had agreed or could agree on the first issue. The court directed the jury to retire to their room and answer the first issue, if they had agreed as to it, or could agree. They started toward the jury room, when plaintiff announced that he would take a nonsuit; but the court refused to permit him to do so, and he excepted. The jury returned with their answer to the first issue. The court received the verdict, withdrew the second and third issues, and entered judgment on the verdict as thus reformed. We held that the court erred in refusing the nonsuit, *Justice Brown* saying that "the plaintiff had a right to submit to a judgment of nonsuit, ·inasmuch as no verdict had been rendered," and the judgment was reversed because of the erroneous ruling. This case is not essentially different from that one. Eleven issues were submitted to the jury. They returned with all the issues practically answered, except those numbered 7 and 8. The court told the jury to retire and consider issues 7 and 8 and to return when they had answered them, "if they wished no change in any others." It was at this time that the nonsuit was taken, or rather tendered, and refused. It is evident that when plaintiff chose to be nonsuited there had been no complete verdict rendered, because the jury had not answered all the issues, as they had been instructed to do ; and the judge at that time apparently so regarded it, for he "concluded thereafter" that issues 7 and 8 were immaterial, and he sent the jury back to their room with the direction to complete their verdict by answering the 7th and 8th issues, and to change the answers to other issues if they were so minded. This left the entire verdict within the control of the jury, except, perhaps, the issues answered by the court. They had the power to change the answers to the last two issues and award substantial instead of nominal damages. The plaintiff did not know what had been the answers of the jury to the issues 10 and 11, when it elected to be nonsuited, and they were the vital issues. The cause of ·action or liability of defendants had already been established, and the remaining inquiry related to the amount of damages. So that the plaintiff had no advantage of the defendant in that respect, having no superior knowledge as to the contents of the verdict; but if it had, the fact remains that there had been no verdict at the time it tried to

withdraw from the court by a nonsuit. Because the court may have afterwards stated its view as to the materiality of issues 7 and 8 can make no difference in the result. The jury had delivered no verdict, and the court had not accepted what they had done as a verdict, otherwise they would not have been told to retire and fill out their verdict, or change it if they wished to do so. There was no reason at that stage of the case why the plaintiff should have become frightened and run away from the verdict. He knew that his cause of action was secure, and he was ignorant of what would be the damages. So far as then appeared to him, he could have gone on with the case in perfect safety. From some undisclosed motive he decided that it was better to withdraw, as he had the right to do.

No harm has come to the defendant, except delay, for the plaintiff must pay the costs. The mere prospect of annoyance from a second litigation is not considered as legally prejudicial to defendant. *Pullman Palace Car Co. v. Cent. Tr. Co.,* 171 U. S., 138 (43 L. Ed., 108).

It is worthy of serious consideration whether issues 7 and 8 were not material or, at least, proper issues in view of the averment in the answer that the linters were "commercially worthless"; but we will express no opinion upon this question until it becomes necessary to do so. We merely decide the single proposition that, without any regard to the real or legal merits of the controversy, there was error in refusing the nonsuit, and there must be a reversal of the judgment for this reason, with a direction to enter judgment below upon the voluntary nonsuit, with costs in that court against the plaintiff.

Reversed.