J. SCHNARR & CO., *et al.,* v. VIRGINIA-CAROLINA CHEMICAL CORP.

159 So. 39.
En Banc.
Opinion Filed December 6, 1934.
Petitions for Rehearing Denied January 25, 1935, and February 15, 1935.

*Kay, Adams, Ragland & Kurz,* for Plaintiffs in Error;
*Lee Guest,* for Defendant in Error.

ELLIS, J.—A writ of error was taken to a judgment in favor of Virginia-Carolina Chemical Corporation against J. Schnarr & Company, a corporation, and C. M. Slaughter in the sum of $5,447.44.

The action was based upon a promissory note, a copy of which was attached to the declaration and by appropriate words made a part of it. The declaration which was filed February 1, 1932, contained three counts, but the plaintiff withdrew the second and third counts.

By stipulation of the parties the case was tried by the judge. A jury which had been called to try the issues joined was withdrawn and the judge took under advisement the testimony which had been submitted and entered his judgment for the plaintiff in the sum stated on February 21, 1934.

The defendants severally interposed as a defense to the action a plea in which it was averred that the plaintiff had at another time in the same court brought an action against J. Schnarr & Company and G. M. Slaughter upon the identical promissory note which the plaintiff declares upon in this action; that in that action the defendants interposed as their second amended plea the plea which was interposed in this case as the plea numbered one. That plea avers that the note was executed by the defendants wholly as an

accommodation for the Southern Fertilizer Works; that the defendants were not indebted to the plaintiff in any sum; that the note was executed by the Company's President without any authority in that behalf; that under the Corporation's Charter it had no power or authority in law to assume the debt which was a debt of the Fertilizer Works.

The plea set out fully and clearly the powers of the Schnarr Company under its charter, the limited powers of its President, the circumstances under which the note was executed and the debt of the Fertilizer Works to the plaintiff created. The plea then proceeded to aver that in the former action the plaintiff interposed several replications to the plea and to those replications the defendants demurred. It is averred that after argument the court sustained the defendants' demurrers. The order of the court is set out fully in the plea which then avers that the order and judgment sustaining the defendants; demurrers to the replications have ever since remained unrevoked; that the plaintiff then set the former down for trial, whereupon the defendant moved the court for a final judgment upon the pleadings.

The court announced during the argument that the motion for judgment in favor of the defendant upon said pleadings would be granted. The plea then avers that the plaintiff requested the court to summons a jury in order that the said plaintiff might go through the form of taking a nonsuit; that the judge of the court "then went through the form of empanelling a jury as if to try the issues in said cause, and thereupon permitted the plaintiff to have an order of nonsuit entered." The plea avers in its last paragraph that the "proceedings had in the aforesaid former suit were upon the identical same cause of action as is now

sued upon, and the orders entered by the court in said former suit were judgments on the merits, and a determination that the plaintiff had no right to recover against this defendant."

The plaintiff demurred to that plea and the demurrer was sustained. That order of the court constitutes the basis of an assignment of error. It is contended that as the replication to the pleas in the former suit was an admission of the accommodation character of the note sued on in that action which is the identical note on which the present action rests the plaintiff is estopped to deny the accommodation character of the note in the present action.

An examination of the replications in the first action shows that they did not deny the material averments of the plea. There was a failure to allege that the defendant's President had authority under the corporate powers or action of the Board of Directors to execute the note. While the replication denied in terms that the note was an accommodation note, other allegations in the replication which must be taken in connection with such categarical denial in construing the pleading under the demurrer showed that the pleader depended upon those latter allegations as taking the note out of the class of an accommodation paper, as for instance the allegation that the crediting and discharge of the debt due by the Southern Fertilizer Works was by the use of the note sued on. Nor did the alleged failure of the Schnarr Company to disaffirm the note establish such a ratification of it as to estop the Company from denying its liability.

The note purported to have been executed by the Corporation. The defense was that it was an accommodation note. No consideration moved to it for its execution. Its charter and by-laws did not authorize its execution. Its

President had no power either under charter provisions or resolution of its Board of Directors to execute the paper. To meet that position the plaintiff said that the Southern Fertilizer Works owed a debt to the Virginia-Carolina Chemical Corporation; that the President of the Schnarr Company was President or manager of the Fertilizer Company; that the Fertilizer Company was to receive a credit upon its indebtedness to the amount which the Schnarr Company would undertake by its note to pay; that in such circumstances the note was taken out of the class of an accommodation paper.

That position was not sustained by the trial court so it sustained the demurrer of the defendant to the replications and on motion of the defendant for a judgment on the pleadings announced that it would grant the motion.

Now the accommodation character of the note being established by the pleadings in the former suit as also the lack of authority of the corporation to execute it for that purpose and the lack of the President, Slaughter, to execute it in the Corporation's name, the defendant contends that the plaintiff is estopped by the pleading in the former action to relitigate that point of law in the present action.

This Court has held that a litigant is estopped by the proceedings in a former suit from occupying an inconsistent position in another and subsequent suit. See Warren v. Warren, 73 Fla. 764, 75 South. Rep. 35; Flynn-Harris-Bullard Co. v. Hampton, 70 Fla. 231, 70 South. Rep. 385.

It is the opinion of the writer that the so-called nonsuit taken in the former case was an involuntary nonsuit because it was prompted by an adverse ruling on the pleadings in which the plaintiff's replications to the defendants' pleas were held to be insufficient and that the facts alleged did not take the note sued on out of the class of an accom-

modation paper which ruling by the court was in that case preclusive of a recovery by the plaintiff. See 18 C. J. 1147.

The statute provides that no plaintiff shall take a nonsuit on trial unless he do so before the jury retire from the bar. Sec. 4357 C. G. L. 1927 (Sec. 2690 R. G. S. 1920).

That statute is in effect a re-enactment of the English statute of 2 Hen. IV c. 7, providing that after verdict a plaintiff shall not be nonsuited. See Southern Cotton Oil Co. v. S. Breen & Co., 171 N. C. 51, 87 S. E. Rep. 938.

A nonsuit is of two kinds, voluntary and involuntary. It is voluntary when the plaintiff allows judgment to be entered against him for costs by absenting himself or failing to answer when called upon to hear the verdict. But even a voluntary nonsuit would not be allowed to him under our statute after the jury had retired from the bar even though he should absent himself by failing to answer when called to hear the verdict.

It is involuntary when the case is called for trial and the plaintiff neglects to appear, or when he has given no evidence on which a jury could find a verdict and it has been held that a nonsuit is involuntary when it is prompted by an adverse ruling of the court which is preclusive of a recovery by the plaintiff. See 18 C. J. 1147.

The circumstances in which the nonsuit was entered in this case show it to be an involuntary one. The plaintiff had declared upon a promissory note which was signed by the Schnarr Company as maker by Slaughter as President. The Company had interposed a plea that it was not authorized by its charter to execute accommodation notes; that the note was an accommodation note and set out the circumstances it which it was given in support of that averment; that under the charter the President of the Corpo-

ration had no power to execute such an obligation in the name of the Corporation.

The plaintiff replied denying that the President of the Corporation was without authority to execute the note previously given by the Corporation; that the note was executed by the Corporation's President merely for the accommodation of Southern Fertilizer Works; averred that it was executed by the defendant through its President upon an understanding between him and the plaintiff that the plaintiff would credit the principal sum of the note to the debt of the Fertilizer Works to the plaintiff, which was done after the note was executed; that Slaughter was President and General Manager of both the Fertilizer Works Corporation and Schnarr & Company; that the Fertilizer Company was indebted to the plaintiff in a large sum and that Slaughter acting for the defendant Corporation executed the note in consideration that the sum for which it was given would be credited by the plaintiff on the indebtedness of the Southern Fertilizer Works Corporation which should be discharged to that extent, which was done and the defendant at no time sought to disaffirm or repudiate the note although it had knowledge thereof through its President.

It is clear that the replication contained no denial of corporate capacity to execute the note for the purpose alleged. The facts alleged did not alter the accommodation character of the note. The defense offered by the plea was that the note was an accommodation paper and the Corporation had no corporate capacity to execute such an obligation.

The court correctly sustained the defendant's demurrer to the replication. Therefore the case stood to be tried on the issue presented by the plea on which no issue was joined. In that state of case the plaintiff set the cause down for trial, by which averment we presume it is meant that the

plaintiff caused the case to be placed on the trial docket. The defendant then moved for a judgment on the pleadings. After argument the court announced that it would grant the motion for a judgment.

That order was preclusive of recovery by the plaintiff. It was a determination by the court on the facts as presented by the pleadings. A nonsuit ordered in such case is an involuntary nonsuit. The character of a nonsuit, whether it is voluntary or involuntary, is not determined by the party who applies for it, but by the circumstances in which it is ordered.

A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based upon the ultimate facts disclosed by the pleadings and evidence and upon which the right of recovery depends irrespective of formal, technical or dilatory objections or contentions. See 2 Black on Judgments, Sec. 694.

If the parties had submitted the case to a jury there would have been no evidence for the plaintiff on which a verdict in his favor could have been rendered in view of the averments of the plea admitted to be true that the Corporation was without power to execute the note in the circumstances set forth in the replication. The court had before it the provisions of the corporate charter which he construed as prohibiting the Corporation from executing the note in the circumstances set forth in the replication. So the plaintiff's evidence in the light of the defendant's plea afforded no tenable ground for recovery and therefore no ground for claiming that the real or substantial grounds of action or defense were not passed upon or that the very cause of action was not decided irrespective of formal, technical or

dilatory objections not involving the merits of the controversy.

The doctrine generally held as loosely expressed is that a nonsuit is not a judgment on the merits and therefore is no bar to another suit upon the same cause of action, but the doctrine thus expressed applies only to voluntary nonsuit.

At common law an involuntary nonsuit was unknown and the power to order it did not exist. The English nonsuit was purely voluntary. It was a judgment against the plaintiffs for not appearing on a day when they are demandable. Paxton v. Popham, 10 East 366; Coke upon Littleton, 138b; 3 Bl. Com. 376.

At common law if a verdict passed against the plaintiff he could not be nonsuited. See Washburn v. Allen, 77 Me. 344.

As shown the common law rule has been limited by statute in this State. A nonsuit cannot be taken after the jury has left the bar. As the rule is applied in this State it often is vexatious to the defendants, who may have prepared their case, secured the attendance of witnesses and engaged counsel, only to be requested to do it all over again if the plaintiff takes a nonsuit. So the theory and practice of an involuntary nonsuit grew up in the American States. In some States it is held that it cannot be granted. See Elmore v. Grymes, 1 Pet. (U. S.) 469, 7 L. Ed. 224; Hunt v. Stewart, 7 Ala. 525.

While in other States it has been the practice to grant it. See Ringgold v. Haven & Livingston, 1 Cal. 108; The Naugatuck Railroad Company v. The Waterbury Button Company, 24 Conn. 468; Tison v. Yawn, 15 Ga. 491, 60 Am. Dec. 708; Eddy v. Wilson, 1 G. Greene (Iowa) 259; Ellis v. Ohio Life Ins. & Trust Co., 4 Ohio, St. 628.

Where an involuntary nonsuit is not recognized and the doctrine is held that a nonsuit must be the voluntary act of the plaintiff, the cumbrous and complicated machinery of a demurrer to the evidence is resorted to, but in those jurisdictions where an involuntary nonsuit is recognized the simpler and easier process of motion for a nonsuit at the trial attains the same end.

It is much simpler, more expeditious and less expensive, and more consistent with the administration of justice, to move for a nonsuit where the plaintiff shall have failed to make out a case which the law says is proper to be submitted to a jury. Such a nonsuit is a bar to a subsequent suit upon the same cause of action between the same parties. See Ordway v. Boston & M. R. R., 69 N. H. 429, 45 Atl. Rep. 243.

The demurrer to the evidence is passing more and more into disfavor. Thus in England it is optional with the plaintiff whether he will be nonsuited or not, and he may compel the defendant to resort to a demurrer to the evidence. Yet it is the practice for the plaintiff, upon the suggestion of the judge that the evidence is insufficient, to submit to a nonsuit with leave to move the court in banc to set it aside. See 16 Am. and Eng. Ency. of Law, 735, note 1.

In the reason it seems that if a demurrer to evidence is permissible and the case may be thus taken from the jury and decided by the judge upon the legal effect of the evidence and a verdict directed for the defendant in a similar situation, the court may order on defendant's motion an involuntary nonsuit to be taken by the plaintiff with leave to move the court in banc to set it aside. Or where the pleadings limit the scope of the evidence, and the plaintiff by the pleadings in the case is limited to such evidence as he relies

upon to support his case which the court holds is insuffiicient to entitle him to recover, it would be a meaningless and senseless formality of law subserving no fundamental right, if the rule requires the submission of all the evidence determined beforehand to be inadequate and wholly insufficient to support the plaintiff's case and then requires the defendant to pursue the cumbersome and expensive course of demurring to the evidence only to have the demurrer sustained and the jury ordered to find for the defendant.

In the instant case the questions of fact were practically submitted to the court. As the evidence was limited by the pleadings it was in fact submitted to the judgment of the court and the judge held that the facts as limited by the pleadings and which would be submitted to the jury were insufficient in law to justify a recovery by the plaintiff. So the court made an order preclusive of recovery by the plaintiff. It is immaterial that the order was correct or erroneous. The order was made and was subject to review in a proper proceeding. It was in effect that the plaintiff should be nonsuited. The fact that the plaintiff agreed to it does not take it out of the category of an involuntary nonsuit on the merits as disclosed by the pleadings and in which all the facts alleged by the plaintiff were admitted.

A majority of the members of the Court, however, think otherwise and are of the opinion that the question has been determined contrary to these views by the case of Pitt v. Abrams, 103 Fla. 1022, 139 South. Rep. 152. In that case, however, no distinction is made between a voluntary and an involuntary nonsuit, nor is anything said as to the effect of an involuntary nonsuit upon subsequent attempted litigation between the same parties involving the same subject matter and presenting the same questions of law.

In the Pitt-Abrams case, *supra*, it would seem that the

order of the court directing a verdict for the defendant would operate to estop the plaintiff from asserting a title to the land between the same parties based upon identical testimony.

The party accommodated by the execution of the note by the Schnarr Company and Slaughter was the Southern Fertilizer Works. The plaintiff received it, according to the pleas, with knowledge of its character. If any liability at all exists upon the note in the hands of the plaintiff, the payee, it is that of a surety for the party accommodated. See 3 R. C. L. 1121.

Assuming that the Corporation had power to execute negotiable paper, the issue of a note for accommodation is an abuse of power, therefore when the paper is issued without authority the right of the holder to recover depends on whether he was ignorant of the fact that the paper was for accommodation and is otherwise a holder in due course. Brannon's Negotiable Instruments Law (3 Ed.) 120-121; Daniel on Negotiable Instruments (6 Ed.) p. 486, Sec. 386.

The provisions of the Negotiable Instruments Law do not affect the question of the want of power of a corporation to execute a note for accommodation, and an agent or an officer of a corporation has no implied authority to bind the corporation by an accommodation indorsement, and although where a corporation has power to execute promissory notes in the course of business the fact that it transcends its power conferred by charter and executes a negotiable instrument for a matter beyond the scope of its business would not render the instrument void in the hands of an innocent purchaser for value notwithstanding it was executed in violation of the public safety of the State. Yet when a person receives a note for the debt of another executed by a corporation for the accommodation of that other

the receiver of the note is charged with notice of the accommodation character of the note. Daniel on Negotiable Instruments, *supra*.

The remaining question presented is whether the evidence sustains the verdict which was rendered for the plaintiff under the issues presented by the pleas.

Under the pleas numbered first and second amended pleas, the defendants set up in the first plea very fully the defense that the note sued on was an accommodation note; that it was without consideration and that the President of the Corporation had no authority under the charter of the Corporation to execute the note. The powers of the defendant Corporation are set out in full under Article 2 of the Charter. The plea averred that certain officers are charged with the general management of the Corporation's business and that the Directors only have the power to carry on its business, while the President exercises only a general supervision of its business affairs; that G. M. Slaughter, as President, at no time had any power or authority from the Directors or otherwise to execute the note; that the business of the defendant Corporation was wholly separate from that of the Southern Fertilizer Works which had become indebted to the plaintiff; that Slaughter was President of the Southern Fertilizer Works also and that the attempt by him to bind the Schnarr Company for any part of the debt due by the Fertilizer Works Company was done solely by him attempting to act in a dual capacity as President of both corporations and without any authority from the Schnarr Company and of its Board of Directors.

The second amended plea averred that no consideration existed for the note sued on; that the Schnarr Company purchased no goods from the plaintiff and was not indebted to the plaintiff in any sum at the time the note was exe-

cuted; that Slaughter prior to the date of the note undertook to sign certain notes in the Corporation's name as an accommodation for the Southern Fertilizer Works and that prior to the date of the note the Southern Fertilizer Works made a remittance to the plaintiff for a sum in excess of the balance due on the notes then outstanding in the defendant's name which were executed for an indebtedness of the Southern Fertilizer Works and on receipt of the remittance the plaintiff applied so much of it as was necessary to pay said notes, which had been executed in the name of the Schnarr Company, and then on the date of the note sued on G. M. Slaughter undertook to execute to the plaintiff the note sued on in this case for the aggregate sum unpaid on the prior notes which had been executed in the name of Schnarr Company but without any consideration whatsoever.

The first amended plea was allowed to be filed, but objections to the second amended plea were sustained. The order does not state on what ground the second amended plea was not permitted to be filed, but the order recites that objections to both pleas were grounded upon the propositions that the application to file them was not timely, and secondly that they were not meritorious. As both pleas were tendered at the same time and the court permitted the first plea to be filed it cannot reasonably be said that the first objection was applicable to the second plea, but not to the first one, so the basis of the court's order as to the second plea must have been that the court did not regard it as meritorious.

A demurrer to the first amended plea was overruled and a motion for a compulsory amendment of it denied.

At this stage of the case, on October 17, 1934, the testimony having been submitted to the jury, the parties, by

stipulation after each had moved for a directed verdict, agreed that the jury should be discharged from further consideration of the cause and that the court, in connection with the further consideration of both motions for directed verdicts, try both the facts and the law in the case to the same extent as if the jury had been waived by the parties at the beginning of the trial of the cause.

The judgment was rendered for the plaintiff on February 21, 1934. A motion to stay execution was made about a month following. Several grounds were urged in support of the motion, among them were that the judgment entered by the court shows no finding of fact by the court, that the motion for a directed verdict was not disposed of by the court, that the entry does not show that the court tried the issue presented by the plea, nor did the judge make any finding as to the character of the Schnarr Company's liability and that of the defendant Slaughter.

A motion for a new trial was also made. Both motions were overruled.

The grounds of the motion for a new trial attacked the sufficiency of the evidence to support the judgment; that the judgment was contrary to law; that the evidence showed that the note sued on was an accommodation paper not binding on the Schnarr Corporation and not within its power to execute and showed no liability on the part of the Corporation and none therefore on the part of the alleged guarantor Slaughter.

The writ of error taken to the judgment was made returnable to this Court in June, 1934.

The stipulation under which the jury was discharged and the case by agreement of parties submitted to this Court provided that the Court should "try both the facts and the law in said case to the same extent as if a jury had been

waived by the parties at the beginning of the trial of said cause." It also provided that "either party against whom an adverse finding of fact may be made or against whom an adverse ruling of law may be made shall have full benefit of exception or exceptions to such rulings and this includes all rulings adverse to the respective parties made during the progress of the submission of testimony herein."

The waiver of the jury by parties was made under the provisions of Sections 4358, 4158 C. G. L. 1927. The same procedure is required to be followed in such case as would be applicable if a jury were present. See Manatee County State Bank v. Wade, 56 Fla. 492, 47 South. Rep. 927; E. E. Alley Co. v. Ball, 102 Fla. 1034, 136 South. Rep. 704.

It is urged that the court should have specifically stated in the judgment what fact or facts he found from the evidence on which he based the judgment. No argument is submitted, no authority is cited, to support the contention and we are unable to find any case in this jurisdiction in support of the proposition. If there had been a trial of fact by a jury the form of verdict which might have been returned for the plaintiff would have contained no reference to any particular fact or facts which the jury might have found to exist. It would in all probability have been a mere statement that the jury found for the plaintiff and assessed its damages at a certain sum. Thereupon the judgment would have been entered.

The judgment in this case necessarily includes a finding of facts by the judge who tried the case necessary to support the judgment entered. A motion for a new trial was made and a bill of exceptions obtained. So the same procedure has been followed as if there had been a jury trial.

We find, however, no merit in the fifteenth assignment of error stated in the brief as constituting the eighth "point"

by which we presume that counsel, intending to follow the rquirements of New Rule 20 relating to the preparation of briefs, meant to say that it constituted one of the "prime or controlling" questions involved.

· The second amended plea, which was not allowed to be filed, constituted a good plea of want of consideration and that defense should have been allowed. See Citizens' Nat'l Bank v. Fla. Tie & Lbr. Co., 81 Fla. 889, 89 South. Rep. 139.

The trial court evidently overlooked the full purport of the plea which was that the note sued on was an accommodation paper for a third person and the plaintiff knew such fact because it knew, as the plea averred, that the defendant Corporation had purchased no goods from the plaintiff, had borrowed no money from it, and was not indebted to it on the date the note was made in any sum whatsoever, but on the other hand that it was given for a debt due by the Southern Fertilizer Works.

We said in the Citizens National Bank case, *supra:*

"The question recurs upon the point whether knowledge on the part of the plaintiff that the note was executed in the name of the corporation by Jones for his benefit, was sufficient to charge the plaintiff bank with notice of the excess of the corporation's power in the issuing of the notes. We think that question must be answered in the affirmative. See 7 R. C. L. 640; 3 R. C. L. 1085; National Park Bank v. German-American Mut. Warehousing & Secur. Co., 116 N. Y. 281, 32 N. E. Rep. 567, 5 L. R. A. 673; Brill Co. v. Norton & Taunton St. Ry. Co., 189 Mass. 431, 75 N. E. Rep. 1090, 2 L. R. A. (N. S.) 525; Pelton v. Spider Lake Sawmill & Lumber Co., 132 Wis. 219, 112 N. W. Rep. 29; Smith v. Los Angeles Immigration & Land Co-Operative Ass'n, 78 Cal. 289, 20 Pac. Rep. 677; Kenyon Realty Co.

v. National Deposit Bank, 140 Ky. 133, 130 S. W. Rep. 955.

"The list of authorities could be extended to a much greater length, but we deem it unnecessary to multiply them. We think that the rule, both English and American, is as stated above, and although there may be some seemingly different holdings in other States, there are circumstances which differentiate them from the case at bar."

As to the power of a corporation to execute accommodation commercial obligations and the reason of the rule which forbids the exercise of such power, see 3 R. C. L. 1091, Sec. 300.

The court erred in not allowing the second amended plea to stand.

We are also of the opinion that the evidence in the case was insufficient to support the verdict and judgment on the issue presented by the first amended plea.

The writer and Mr. Justice BUFORD are of the opinion that the second plea first interposed was a valid defense on the ground of estoppel.

Rule 31 of Circuit Courts, Law Actions, provides that the plaintiff shall in no case be compelled to submit to a nonsuit, but if he desires to do so it must be done before the jury retires. The plaintiff was not compelled in this case to take a nonsuit. It was confronted with the alternative of having a judgment entered against it upon the pleadings, which in effect admitted the accommodation character of the note sued on. In those circumstances the plaintiff asked for the nonsuit and obtained it. The question is, is the plaintiff precluded in the circumstances from maintaining another action on the same commercial paper against the same parties, notwithstanding its admissions by pleadings in the former action, and the announced purpose

of the court to enter a judgment on the pleadings for the defendant?   Or will the nonsuit be regarded as in the nature of an involuntary nonsuit made so by the announced ruling of the court which precluded a recovery by the plaintiff.

To hold that the plaintiff may take a voluntary nonsuit in such cases is to twist the purpose of Rule 51, *supra,* to give an advantage to the plaintiff not contemplated by the rule and secure a privilege not within the purview of Section 4357 C. G. L., *supra.*   It would put the plaintiff in the position of being able after submitting its case on the merits either by pleadings or on the evidence to return again and again to the same or another tribunal to vex and annoy the defendant until the court, growing tired of such tactics and indignant at such legal privilege, would without any rules of law to sustain him but as an expression of the court's own sense of right in view of the facts, dismiss the case and then be reversed by an appellate court for an abuse of discretion.

The judgment of the trial court is reversed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.

### ON REHEARING.

ELLIS, P. J.—On petition for rehearing the Court has decided to modify its language insofar as it relates in the closing paragraph of the opinion to the plea of estoppel and Rule 31 of the Circuit Courts and voluntary nonsuit, so as to eliminate any possibility of construing the same so as to make it appear that any other justice of this Court than Mr. Justice BUFORD and the writer participated in the views there expressed.   Also to eliminate any possibility of so interpreting language as to make it appear that it was the Court's purpose or the purpose of either Mr. Justice BU-

FORD or the writer to convey the idea that the learned attorney for the defendant in error, Mr. Lee Guest, or his client, sought to "vex or annoy the defendant," Virginia-Carolina Chemical Corporation.

The language is not capable of such strained construction. It was used merely to illustrate the point that unless such interpretation was placed upon the rule as therein contended for by Mr. Justice BUFORD and the writer, it would be possible for plaintiff to vex and annoy the defendant.

Rehearing denied.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.